The pilot of the brig says that the brig had got around to head northwest by north, at the blow, and that the schooner was heading about southwest, at the blow. This would make the blow angle aft on the schooner one point from square across. It would involve a change of three points in the heading of the schooner. If the wind was west, the schooner, at south by west, was within seven points of it. If she changed only two points. or to southwest by south, she would have been, with the wind west, as much as five points from the wind, and the brig, at northwest by north. would strike her, angling aft on her, two points from square across. Exactly how the wind was, and how close the schooner could sail to it and keep her sails full, does not appear. If the wind was west, the schooner, at south by west, could, probably, have come closer to the wind, without gybing. The master of the brig testifies. that the schooner's booms were swung over on her starboard side, and her sails were full, that is, full to starboard, which puts her on her port tack; and so he says she was heading, at the blow, northwest by west, and the brig north northwest, which would make the blow angle forward on the schooner five points from square across. This testimony of the master bears marks of exaggeration. The testimony of those on the schooner is, that their booms were to port, and their sails full to port, at the blow. This, on the whole evidence. is not inconsistent with the schooner's having come up to the wind enough to throw herself across the brig's course, and is consistent with the libel. It is very certain, from the testimony of the persons on the schooner, that they did not see the brig till she was near them, that there was alarm on the schooner, that her master gave the order to port, and that that order was obeyed. The brig was, at the same time, in the discharge of her duty to avoid the schooner, starboarding. It was proper for her to do so, with a green light crossing her course from her port to her starboard. and she had, by starboarding, brought that light from being a point on her port bow to being a point on her starboard bow. Therefore, it was for the brig to keep on starboarding, which she did. Any porting by the schooner, under such circumstances. baffled the brig. Such porting cannot be regarded as a porting in extremis. It resulted from the fact. that the lookout on the schooner was inefficient, and that, consequently, the light of the brig was not seen as soon as it should have been. The brig was not crowding the schooner, but was manœuvring to pass her at a proper and safe distance.

I have given this case a great deal of consideration; and. while there are matters of evidence on both sides that are incapable of comprehension. I think the brig cannot be held responsible for the collision, and that the libel must be dismissed, with costs.

WESSELS (NISSOM v.). See Case No. 10,-278.

WESSON (CHASE v.). See Case No. 2,631.

WEST (ALEXANDER v.). See Case No. 177.

WEST (BARTHOLOMEW v.). See Case No. 1,071.

---

## Case No. 17,421.

### WEST v. COLUMBIAN INS. CO.

[5 Cranch, C. C. 309.] [1]

Circuit Court, District of Columbia. May Term, 1837.

#### MARINE INSURANCE—DEVIATION.

In a voyage to Pernambuco, the vessel, when she arrived off Pernambuco, came to anchor off the port, when she might have gone directly in; *held*, that it was a deviation that discharged the underwriters.

The defendants insured the plaintiff [John West] $500 on his commissions as supercargo of the schooner Leonidas, from Alexandria to Pernambuco, until landed. The vessel and cargo were insured, by other policies, to Pernambuco, and two other ports. She arrived and came to anchor off Pernambuco, · in the outer roadstead, at nine o'clock, a. m. The master went on shore to inquire of the market, and returned in a few hours. A storm came on; the anchor dragged, and the vessel was going ashore. They hoisted sail, and endeavored to crawl off, but could not, and she went on shore. There was evidence that she might have gone safely into the port, if she had not come to in the outer roadstead.

Mr. Semmes, for plaintiff, contends that the vessel never arrived at Pernambuco; but if she did, she did not remain twenty-four hours in good safety. Camden v. Cowley, 1 W. Bl. 417.

Mr. Taylor, contra, prayed the court to instruct the jury. in substance, that if they should find, from the evidence, that when the schooner arrived off Pernambuco, she could have proceeded to the port without coming to anchor in the outer road, the stopping there was a deviation which discharged the underwriters.

Which instruction the court gave (nem. con.).

Mr. Semmes then prayed the court to instruct the jury that if they believe, from the evidence. that the anchoring of the vessel in the outer road of Pernambuco, was an arrival at Pernambuco, then the plaintiff is entitled to recover, because she was not, twenty-four hours in safety after her arrival.

But THE COURT (nem. con.) refused.

Verdict for the defendant.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]